Raphael Janove (Utah Bar No. 19283)
**Janove PLLC**
500 7th Avenue, 8th Floor
New York, New York 10018
(646) 347-3940
raphael@janove.law

*Attorney for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SKYLER MAMONE FELDT, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | **COMPLAINT**<br><br>**PROPOSED CLASS ACTION**<br><br>JURY DEMANDED<br><br>Case No. 2:25-cv-00353 |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Skyler Mamone Feldt ("Plaintiff") brings this Class Action Complaint, individually and on behalf of all others similarly situated (collectively, the "Class Members" or the "Class"), against Defendant Apple Inc. ("Apple" or "Defendant"), and alleges as follows based upon information and belief through the investigation of himself and his counsel:

## NATURE OF THE ACTION

1.     Apple, in a bid to capitalize on the growing consumer demand for the integration of artificial intelligence into their smartphones, promised a revolutionary suite of features for its new iPhone 16 lineup, dubbed "Apple Intelligence," including substantial AI-based enhancements to Siri.

2.     Starting in June 2024, Apple marketed these AI capabilities as transformative to user experience: iPhone 16's digital assistant would have "superpowers." Apple overwhelmed the internet with waves of advertisements promising that the new lineup of phones would be equipped with these new groundbreaking features, materially affecting the purchasing decisions of millions.

3.     Consumers reasonably believed these promises and eagerly awaited the launch of Apple Intelligence and the iPhone 16 with its enhanced AI features.

4.     However, Apple was aware that there was no way these features could be delivered on the timeline it promised consumers. In fact, recently, Apple has acknowledged that the Apple Intelligence suite does not exist now, did not exist then, and that it will be some time before it exists for iPhone purchasers at all. As recently as May 1, 2025, the Chief Executive Officer of Apple admitted that Apple "need[s] more time to complete our work" on the AI features for the iPhone 16 lineup.

5.     Apple misled millions of consumers, including Plaintiff and Class Members, into purchasing smartphones based on features that did not and do not exist, violating consumer protection and false advertising laws.

## THE PARTIES

6.     Plaintiff Skyler Mamone Feldt is a citizen of Utah and purchased an iPhone 16 Pro Max in October 2024 in Murray, Utah. Plaintiff paid more than he otherwise would have because of Apple's false and deceptive advertising regarding the iPhone 16's AI capabilities.

7.    Defendant Apple Inc. is a California corporation headquartered in Cupertino, California, at One Apple Park Way, Cupertino, California 95014.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed Class includes 100 or more members; and members of the proposed Class are citizens of different states than the Defendant.

9.    This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in Utah, and the acts and omissions giving rise to Plaintiff's claims occurred in Utah.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant conducts business in this District.

## FACTUAL ALLEGATIONS

11.    Apple is the world's most popular smartphone manufacturer, shipping 226 million iPhones around the world in 2024.[1] Apple captured 23% of the global smartphone market share in the fourth quarter of 2024.[2] In that quarter, "the iPhone 16 series claimed 20% of total sales" with the iPhone 16 Pro Max as the most popular model.[3]

---

[1] https://www.counterpointresearch.com/insight/global-smartphone-share/

[2] https://canalys.com/newsroom/worldwide-smartphone-market-2024.

[3] https://www.kantar.com/inspiration/technology/iphone-16-secures-top-selling-global-smartphone-model-in-competitive-holiday-period

12.     Consumer demand for smartphones integrated with generative artificial intelligence is estimated to be the fastest-growing part of the smartphone market, eclipsing demand for smartphones without AI features.[4]

13.     To capitalize on consumer demand for AI, in 2024 Apple embarked on a campaign to tout the capabilities of "Apple Intelligence," a suite of AI features to be integrated in its forthcoming operating systems and products, including the iPhone 16 lineup. Apple marketed these capabilities even though the core features did not yet exist and could not be properly integrated into Apple's operating systems on the timeline Apple promised.[5]

14.     In particular, Apple touted new AI-enhanced features for its Siri voice assistant. It claimed that by using AI a new version of Siri would be able to analyze user data when responding to user questions and requests; it would be able to better control mobile applications; and it would be able to understand context—such as seeing what is on the iPhone 16's screen—to provide better responses.

15.     Apple introduced its marketing of Apple Intelligence with a press release dated June 10, 2024, dubbing it "the personal intelligence system that puts powerful generative models at the core of iPhone, iPad, and Mac."[6]

16.     In the release, Apple promoted these features as transformative, stating that "Apple Intelligence understands personal context to deliver intelligence that is helpful and relevant." Apple also emphasized that "Siri Enters a New Era," highlighting that:

---

[4] https://blogs.idc.com/2024/07/05/the-rise-of-gen-aismartphones/#:~:text=Market%20Opportunity,78.4%25%20for%202023%2D2028.

[5] https://tech.yahoo.com/phones/articles/apple-intelligence-just-ran-more-202000273.html.

[6] https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/

With richer language-understanding capabilities, Siri is more natural, more contextually relevant, and more personal, with the ability to simplify and accelerate everyday tasks. It can follow along if users stumble over words and maintain context from one request to the next.

. . . .

With onscreen awareness, Siri will be able to understand and take action with users' content in more apps over time. For example, if a friend texts a user their new address in Messages, the receiver can say, "Add this address to his contact card."

. . . .

With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, "Bring up that article about cicadas from my Reading List," or "Send the photos from the barbecue on Saturday to Malia," and Siri will take care of it.

. . . .

Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, "Play that podcast that Jamie recommended," and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, "When is Mom's flight landing?" and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time.

17.     During Apple's Worldwide Developers Conference that same day, Apple's product presentation centered on Apple Intelligence and the new AI-enhanced Siri features, promising that it could summarize emails, schedule meetings based on message content, and perform actions like sending photos or adding calendar events. Apple claimed all these actions could be taken entirely through voice commands, and that "Siri will find and understand things it never could before":[7]

---

[7] https://www.youtube.com/watch?v=RXeOiIDNNek&ab_channel=Apple.





18.    As part of the presentation, Apple displayed Siri's ability to locate a user's mom's flight and lunch reservation by searching through the user's texts and emails.

19.     Following the June 2024 launch, Apple embarked on a marketing campaign to promote the AI-enhanced features of Siri and drive sales of the iPhone 16, which became available for pre-sale in September 2024.

20.     For instance, in September 2024, Apple widely ran a TV commercial featuring celebrity Bella Ramsey touting the AI-enhanced versions of Siri, promising a "More personal Siri," and "Apple Intelligence" on the iPhone 16 Pro. The advertisement displayed that the next generation Siri could complete an unstructured task such as producing the name of a person whom an iPhone 16 Pro user previously met at a given cafe:



21.     That month, Apple also posted a video advertisement that represented that the iPhone 16 was "Built for Apple Intelligence" and included a "More personal Siri" that could use data across a phone's mobile applications to answer questions such as "When is moms flight landing".



22.     As reflected by an October 2, 2024 archived version of Apple's website,[8] Apple promised "A new era for Siri" and stated that "With all-new superpowers, Siri will be able to assist you like never before," touting AI-features such as "Awareness of your personal context" and "Richer language understanding and an enhanced voice make communicating with Siri even more natural," and again suggesting that Siri could use "personal context" to find answers to when a user asked when the user's mom's flight arrives, using information saved on the phone combined with information online:

---

[8] https://web.archive.org/web/20241002000044/https://www.apple.com/iphone-16/

**With all-new superpowers, Siri will be able to assist you like never before.**



**Richer language understanding** and an enhanced voice make communicating with Siri even more natural. For example, if you stumble over your words, Siri still knows what you're getting at.



23.     But even while running these advertisements, Apple knew these claims were false. The new AI-enhanced features of Siri might not even be ready to be rolled out to users' phones until 2026 or even 2027.[9] Apple executives, including software engineer Craig Federighi, "voiced strong concerns internally that the features didn't work properly – or as advertised – in their personal testing" and the internal AI division at Apple "believe[s] that work on the features could be scrapped altogether" because the features might need to be rebuilt "from scratch."[10]

24.     A Bloomberg article on February 14, 2025, entitled, "Apple's Long-Promised AI Overhaul for Siri Runs Into Bugs, Possible Delays,"[11] reported that Siri's enhanced AI features were not on track for release until May 2025 at the earliest.

---

[9] https://tech.yahoo.com/phones/articles/apple-intelligence-just-ran-more-202000273.html

[10] https://www.theverge.com/news/626035/apple-delays-upgraded-siri-intelligencelonger-than-we-thought.

[11] https://www.bloomberg.com/news/articles/2025-02-14/apple-s-long-promised-ai-overhaul-for-siri-runs-into-bugs-possible-delays

25.    Then, in a Bloomberg article on March 2, 2025 entitled "Apple's Artificial Intelligence Efforts Reach a Make-or-Break Point,"[12] it was reported that Apple "barely had a functional prototype" of the AI-enhanced Siri about which it had begun marketing in June 2024.

26.    And as further reported by Bloomberg on March 14, 2025 in an article entitled, "Apple's Siri Chief Calls AI Delays Ugly and Embarrassing," an Apple senior director, Robby Walker, said during a meeting with Apple's Siri employees that it was not even certain whether Siri's AI-enhanced features would launch until 2026 at the earliest.[13]

27.    Reportedly, Walker stated at the meeting "that the delays were especially 'ugly' because Apple had already showed off the features publicly. 'This was not one of these situations where we get to show people our plan after it's done. . . . We showed people before.'"

28.    On April 11, 2025, the New York Times also reported that the AI-enhanced features for Siri were delayed from a launch schedule in Spring 2025 "because internal testing found that it was inaccurate on nearly a third of requests."[14]

29.    On April 22, 2025, the Better Business Bureau's National Advertising Division issued a recommendation that "Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features."[15] The recommendation noted:

> The National Advertising Division's (NAD) inquiry focused on express and implied claims made on the Apple Intelligence webpage and in promotional materials for the iPhone 16 and iPhone 16 Pro that conveyed the availability of certain Apple Intelligence features, including Priority Notifications, Image Generation tools (Image

---

[12] https://www.bloomberg.com/news/newsletters/2025-03-02/apple-siri-compared-with-alexa-m4-macbook-air-and-ipad-air-2025-coming-soon-m7rn2k2y

[13] https://www.bloomberg.com/news/articles/2025-03-14/apple-s-siri-chief-calls-ai-delays-ugly-and-embarrassing-promises-fixes?embedded-checkout=true

[14] https://www.nytimes.com/2025/04/11/technology/apple-issues-trump-tariffs.html

[15] https://bbbprograms.org/media/newsroom/decisions/apple-intelligence

Playground, Genmoji, and Image Wand), ChatGPT integration into Siri and Writing Tools, and new Siri capabilities.

30.    As the Better Business Bureau explained, Apple's claims that these AI features were

"Available Now" were misleading and not properly supported when made:

> NAD found that Apple's unqualified "Available Now" claim, positioned at the top of its Apple Intelligence webpage and above detailed feature descriptions, reasonably conveyed the message that all listed features—including Priority Notifications, Image Playground, Genmoji, Image Wand, and ChatGPT integration—were available at the launch of the iPhone 16 and iPhone 16 Pro.

> Although Apple launched these features in staggered software updates between October 2024 and March 2025, NAD found that these claims were not properly supported at the time they were first made. NAD further found that Apple's disclosures—such as footnotes and small-print disclosures—were neither sufficiently clear and conspicuous nor close to the triggering claims.

> While these features are now available, NAD recommended Apple avoid conveying the message that features are available when they are not.

31.    Worse, as to "Siri Functionality," the Better Business Bureau stated that:

> NAD also reviewed claims that Apple Intelligence enabled new Siri functionality, including onscreen awareness, personal context, and cross-app actions. These claims also appeared under the "Available Now" heading.

> During the inquiry, Apple informed NAD that these Siri features would not be available on the original timeline and that it had updated its promotional materials accordingly and modified claims and disclosures to adequately communicate their status.

32.    On a May 1, 2025, earnings call, Apple Chief Executive Officer Tim Cook stated that

"we need more time to complete our work" on the AI features for the iPhone 16 and that "it's just

taking a bit longer than we thought." Cook did not give a specific timeline for when these features would be available to iPhone 16 users.[16]

33.    Apple has silently walked back some—but not all—of its false statements about Siri's capabilities. For instance, Apple's page for the iPhone 16 now contains forward-looking statements like "iPhone 16 is built for Apple Intelligence" and notes that iPhone 16 brings "AI-opening possibilities,"[17] in contrast to the current statements on the October 2024 version in paragraph 22 above. Apple no longer promises "a new era for Siri" but instead a "start of a new era for Siri," and no longer promises that Siri can use "personal context" to answer questions like when does mom's flight land. Now it merely generalizes: "With an all-new design, richer language understanding, and the ability to type to Siri whenever its convenient for you, Siri is more helpful than ever."

34.    Amid Apple's ongoing failure to deliver on public promises of Apple Intelligence and an AI-enhanced Siri, it has recently restructured its AI and Siri teams.[18]

35.    Plaintiff was exposed to various aspects of Apple's deceptive and misleading advertising campaign and relied on the false claims and representations about the AI capabilities of the iPhone 16.

36.    Plaintiff watched the September 2024 advertisement promoting Siri's ability to complete unstructured tasks using AI, discussed in paragraph 20. Siri's ability to wield Apple Intelligence to assist with day-to-day tasks, as demonstrated and claimed in the advertisement, was of great appeal to Plaintiff and materially contributed to his decision to purchase an iPhone 16 Pro Max.

---

[16] https://www.businessinsider.com/amazon-apple-ai-voice-assistant-siri-alexa-earnings-2025-5

[17] https://www.apple.com/iphone-16/

[18] https://www.bloomberg.com/news/newsletters/2025-04-27/what-is-happening-with-apple-s-ai-team-siri-and-robotics-shifts-mark-a-breakup; https://www.bloomberg.com/news/articles/2025-03-20/apple-vision-pro-chief-mike-rockwell-named-siri-head-giannandrea-keeps-ai-role

37.     Plaintiff also watches Apple's yearly product reveals typically held in September and was exposed to additional promises surrounding the Apple Intelligence capabilities of the new iPhone 16 lineup, which materially impacted his decision to purchase an iPhone 16 Pro Max.

38.     Plaintiff and members of the proposed Class purchased models of the iPhone 16 but did not receive the AI features Apple promised them, causing financial harm and loss of the benefit of the bargain.

39.     Apple has violated the Utah Consumer Sales Practice Act by misrepresenting the characteristics and benefits of the iPhone 16, failing to deliver on its promises, and not adequately disclosing the delays in feature availability.

40.     Reasonable consumers such as Plaintiff believed Apple's representations and advertised claims about the AI capabilities of the iPhone 16 and reasonably believed these features would be included in the products they purchased.

41.     Class Members, including Plaintiff, reasonably relied on Apple's false representations when deciding whether to purchase the iPhone 16.

42.     Defendant knew, or should have known, that its representations regarding the AI capabilities of the iPhone 16 were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the iPhone 16 to Plaintiff and the Class Members using the false advertisements and representations.

43.     Defendants knew or should have known that reasonable consumers would believe its false claims about the capabilities of the Apple Intelligence functions on the iPhone 16 and would expect the product to be capable of those functions, thus inducing the consumers to purchase the product.

44.    Defendant publicly advertised that the iPhone 16 lineup would have Apple Intelligence functions despite knowing that these features would not be present on the devices at the time of sale.

45.    Defendant deliberately chose to continue making false representations and claims regarding the Apple Intelligence features on the iPhone 16 lineup despite its knowledge of the falsity of these claims and its knowledge that reasonable consumers rely on these representations when purchasing these products.

46.    Plaintiff and the Class Members would not have purchased the iPhone 16, or would only have purchased it for a lower price, had they known the truth about its AI capabilities and the falsity of Defendant's representations and claims.

47.    Plaintiff and all Class Members paid a price premium for the iPhone 16 that they would not have paid if Defendant had not made its false and misleading claims about the iPhone 16, and suffered losses by purchasing a product at a higher price than what it would have been sold for if Defendant had not made such claims.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this action on behalf of himself and on behalf of the following proposed Class, initially defined as follows:

> All persons in Utah who purchased an iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, or iPhone 16 Pro Max on or after June 10, 2024, for personal, family, or household purposes, and not for resale.

49.    Excluded from the proposed Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, and any entity in which a Defendant has a controlling interest.

50.    Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

51.     The claims of all Class Members derive directly from a single course of conduct by Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the Class Members. Defendant does not differentiate, in degree of care or candor, in their actions or inactions, or the content of its statements or omissions, among individual Class Members.

52.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

53.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other businesses, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

54.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

55.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Class are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes many thousands of members. The precise number of Class Members, and their addresses, are unknown to Plaintiff at this time, but can be ascertained from Defendant's records.

56.     **Ascertainability**. The Class is ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within their control or by Plaintiff and the Class themselves. Plaintiff anticipates

- 15 -

providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

57.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)).  Common questions of law and fact exist as to all Class Members. These questions predominate over the questions affecting only individual Class Members. The common legal and factual questions include, without limitation:

(a)    Whether Defendant misrepresented the capabilities of the iPhone 16 in advertising and marketing materials;

(b)    Whether Defendant's conduct is likely to deceive an objectively reasonable consumer;

(c)    Whether Defendant acted willfully:

(d)    Whether Defendant engaged in the conduct alleged in this Complaint;

(e)    Whether Plaintiff and the Class Members are injured and harmed directly by Defendant's conduct;

(f)    Whether Defendant's omissions and misrepresentations violate Utah law;

(g)    Whether Plaintiff and the Class are entitled to damages, restitution, and equitable relief.

58.    **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiff and the Class are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and the Class. Plaintiff and all Class Members are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class Members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint. Plaintiff and Class Members would

not have purchased, or would have been willing to purchase only at a lower price, the iPhone 16, if they knew the truth about the availability of the AI-enhanced features on the phones.

59.    **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members, and he has retained counsel competent and experienced in complex class action, business competition, and consumer litigation.  Plaintiff and his counsel will fairly and adequately protect the interest of the Class Members.

60.    **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff's and Class Members. There is no special interest in Class Members individually controlling the prosecution of separate actions. The damages suffered by individual Class Members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the Class Members individually to redress effectively the wrongs done to them. And, even if Class Members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed.  Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

61.    **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Utah Consumer Sales Practices Act
### (on behalf of Plaintiff and the Class)

62.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

63.     Plaintiff brings this count individually and for the Class.

64.     Defendant's conduct alleged above constitutes deceptive acts or practices in connection with a consumer transaction under Utah Code § 13–11–1 *et seq.*

65.     The purchase of iPhone 16 devices satisfies the definition of a consumer transaction in that it required the Plaintiff and the Class to expend money on goods or services.

66.     Defendant violated Utah Code § 13–11–4(2)(a) by representing that the iPhone 16 had characteristics, uses, or benefits it did not have.

67.    Defendant violated Utah Code § 13–11–4(2)(b) by representing that the iPhone 16 was of a particular standard, quality, and grade, when it is not.

68.    Defendant violated Utah Code § 13–11–4(2)(e) by representing that the subject of a consumer transaction has been supplied in accordance with Apple's previous representations regarding iPhone 16's features.

69.    Defendant violated Utah Code § 13–11–4(2) by breaching its express warranties to Plaintiff and the Class regarding the iPhone 16 features.[19]

70.    Defendant violated Utah Code § 13–11–5 by engaging in unconscionable acts and promises through its false promises of AI-enhanced features in the iPhone 16, taking advantage of Plaintiff's and the Class's desire for AI technology.

71.    If not for Defendant's deceptive acts or practices or unconscionable acts or practices in violation of the Act, Plaintiff and the Class would not have purchased an iPhone 16 or would have paid less for the product.

72.    Plaintiff and the Class are therefore entitled to recover $2,000 in statutory fines or damages as compensation for their losses caused by Defendant's violation of Utah Code § 13–11–1 *et seq.*, pursuant to Utah Code §§ 13–11–19(2) & (4). They are further entitled to a declaratory judgment that Defendant's acts and practices described herein violate Utah Code § 13–11–1 *et seq.* pursuant to Utah Code §§ 13–11–19(1)(a) & (3).

---

[19] *See also* Utah Code § 70A-2-313(1) ("(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.").

73.    Finally, Plaintiff and the Class are entitled to an award of attorneys' fees under Utah Code § 13-11-19(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, prays for relief and judgment against Defendant as follows:

A.    certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.    awarding Plaintiff and the Class statutory fines, compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    granting all other declaratory and equitable relief;

D.    awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

E.    awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable by law;

F.    awarding pre-judgment and post-judgment interest; and

G.    granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 5th day of May, 2025.

**JANOVE PLLC**

BY:      /s/ /Raphael Janove
RAPHAEL JANOVE

ATTORNEY FOR PLAINTIFF AND THE PROPOSED CLASS